UNITED STATES BANKRUPTCY COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 7 |
| JOANNE N. LUNN | ) | CASE NO. 19-11275 MSH |
| | ) | |
| Debtor | ) | |
| PAULA FRUMAN | ) | |
| | ) | |
| Plaintiff | ) | ADVERSARY PROCEEDING |
| | ) | NO. 19-01092 |
| vs. | ) | |
| | ) | |
| JOANNE N. LUNN | ) | |
| | ) | |
| Defendant | ) | |
| | ) | |

**PRETRIAL MEMORANDUM OF JOANNE N. LUNN**

The Defendant, Joanne N. Lunn ("Lunn"), hereby respectfully submits her Pretrial Memorandum in accordance with this Court's Order dated April 20, 2020. It is not joint for the reasons previously stated in Lunn's Motion to Extend/Amend Pretrial Order filed on April 7, 2020.

**a. Statement regarding the Court's authority to enter a final order as to each matter in dispute.**

Pursuant to Rule 7058 of the Fed.Rules Bankr.Proc., this Court has authority to enter a judgment and allocate damages in this pending adversary proceeding.

**b. Statement as to whether each party consents to the entry of a final order by the Court as to each matter in dispute:**

Lunn consents to the entry of a final order by the Court as to each matter in dispute.

**c. Facts to which the parties have stipulated.**

1

The parties have not stipulated to facts. However, in Paula Fruman's ("Fruman") Opposition to Lunn's Motion for Summary Pursuant to Plaintiff's Opposition to Defendant's Motion for Summary Judgment (the "Opposition"), the parties are in agreement that as to the following facts:

1. In 2013, Fruman brought suit in Suffolk Superior Court, C.A. No. 1384CV02976, (the "Suit") against Jay Pabian, Pabian & Russell, LLC ("Pabian Defendants") and Joanne Lunn.

2. As pertains to Lunn the alleged claims were for breach of fiduciary duty, breach of contract and infliction of emotional distress..

3. After a full trial at which Lunn appeared pro sethe verdict reached by the jury determined that there was a breach of fiduciary duty by Lunn to Fruman which caused the Plaintiff damages amounting to $10,000.00

4. All of the remaining damages in the amount of $350,000.00 were allotted by the jury to the breach of contract claim.

5. Lastly, the jury decided that there was not intentional infliction of emotional distress caused by Lunn and therefore found no damages for that claim.

6. Based on these findings, a Judgment on Jury Verdict entered for Fruman on March 8, 2017 in the total amount of $514,369.00 which consists of $360,000.00 in damages plus the remainder for interest and costs.

7. On April 17, 2019, Lunn filed this case originally as a Chapter 13 Bankruptcy. On May 2, 2019, she filed a Motion to Convert Case From Chapter 13 to Chapter 7 which was allowed by Judge Feeney on May 3, 2019.

8. The Fruman judgment in the amount of $514,369.00 is included on Lunn's Schedule E/F is an unsecured claim.

**d. The issues of fact which remain to be litigated. The issues of law to be determined.**

1. This Court must determine and Fruman must prove whether or not Lunn legally personally breached a contract with Fruman and if so, did such breach create a nondischargeable debt to Fruman, and in what amount, if any, "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition pursuant to 11 U.S.C. §523(a)(2)(A). Lunn asserts that she did not obtain money or services from Fruman that caused her harm, nor under false pretenses, false representation or actual fraud cause any harm to Fruman and that therefore any debt owed to Fruman is dischargeable. If Fruman cannot satisfy her burden of proof under 11 U.S.C. §523(a)(2)(A) but there is a debt for breach of contract, then said debt is nonetheless discharged pursuant to 11 U.S.C. § 727.

2. This Court must determine and Fruman must prove whether or not Lunn's debt, to Fruman and in what amount thereof, if any, was incurred as a result of "fraud or defalcation while acting in a fiduciary capacity, embezzlement or larceny" so as to be nondischargeable pursuant to 11 U.S.C. §523(a)(4). Lunn asserts that at no time did she commit fraud as to Lunn or misappropriate any funds for her own gain at Fruman's expense, nor did she ever embezzle funds from or commit larceny against Fruman or anyone. If Fruman cannot satisfy her burden of proof under 11 U.S.C. §523(a)(4) then Lunn is entitled to a discharge of any such alleged debt pursuant to 11 U.S.C. § 727.

3. This Court must determine and Fruman must prove whether or not Lunn breached a fiduciary duty to Lunn and if so, was such debt resulting from said breach of fiduciary duty and in what amount, if any, was "for willful and malicious injury by the debtor to another entity or to the property of another entity" pursuant to 11 U.S.C. §523(a)(6). This requires that said breach to be both willful and malicious in order to be nondischargeable. Lunn asserts that she never acted with any ill-will toward Fruman and therefore any debt to Fruman that may have arisen from a breach of fiduciary duty is dischargeable. If Fruman cannot satisfy her burden of proof under 11 U.S.C. §523(a)(6) but there was a breach of fiduciary duty, then said debt is nonetheless still discharged pursuant to 11 U.S.C. § 727.

**e. A brief summary of each party's case.**

Lunn worked for Jeffrey Fruman ("Jeff") at JT Electronics Corporation ("JT") from when it was founded in 2008 until his death in 2013. They were co-workers and became good friends over time, as Lunn first started working for him in 2002 at International Cable. She first started as a warehouse manager, then became Jeff's personal assistant and eventually she became President of JT, although Jeffrey Fruman was always her boss and mentor. He was the one who had funded these companies and had a law degree. Lunn respected him and reported directly to him while he was alive.

JT was originally incorporated in 2008 in Avon, MA with Lunn as a 60% shareholder, Jeff as a 15% shareholder and Tim Bradley as a 25% shareholder. The parties, Jeffrey Fruman, and others, all at some point in time, owned shares in JT. Lunn never received or paid more than $10,000.00 for any transfer of her stock. At all times that Lunn worked at JT she was compensated as a salaried employee. Any bonuses or additional compensation, if any, were determined by Jeff, including for himself, Fruman and anyone else who was paid by JT.

4

At the time of his death from an overdose, accidental or otherwise, while on a business trip in Hong Kong on March 12, 2013Jeff was married to his second wife, Paula Fruman. Lunn was friendly with Fruman as well. Due to their close friendship, Jeff confided in Lunn about his marital problems with Fruman. Jeff even relied on Lunn to facilitate a reconciliation between he and Fruman including restoring communications between them and a rendezvous at their favorite hotel to make up after a fight. His ill-fated trip to Hong Kong was after another one of their blowups and after Jeff had just taken $100,000.00 from JT.

On the business side of their relationship, Lunn took direction from Jeff as he was the one with the legal degree and she always trusted him to do what was best for the company. At times this involved changing the percentage what amount of stock Jeff, Lunn, and Fruman had in the company. This was sometimes done to qualify and maintain its status as a "woman-owned business." At all times Fruman was informed and consented to said changes. Once by text to Lunn and another time by email to JT's attorney. Fruman also admitted to authorizing her stock transfers in a conversation she recorded on March 17, 2013 with Jay Pabian and Michael Londono.

It was at Jeff's insistence, that JT vie for an advantage in bidding for contracts by being a minority women owned business. For that purpose, Jeff asked Fruman and Fruman consented to transfer her share to Lunn as it was required that such majority business owner be not only female but also a U.S. citizen. Fruman was not yet naturalized at that time and therefore they thought Lunn should hold the majority of the shares. It was all for naught as the company was not awarded any such contracts.

At one point, on or about June 13, 2012, Jeff emailed Lunn that he wanted to change the compensation structure at JT and defer some of his over $700,000.00 in compensation to his

5

wife. At no time was Lunn advised that she was entering into contract negotiations with her boss and that she should have sought out legal advice. Although Lunn did not agree with Jeff's proposal, as there was no benefit to her to make the changes he wanted, she did not send him an email response, but instead met with him in person the next day to discuss changes. Never did Lunn think, intend or agree that she was personally obligating herself to pay Fruman anything.

Although Fruman was allowed to and received significant compensation from JT by Jeff, she never worked for the company in any meaningful sense, nor knew how to run it. Therefore it was the Executors of Jeffrey's estate, Attorney Jay Pabian ("Pabian') and Todd Kamens ("Kamens") and also Jeff's father Larry Fruman ("Larry") that took over management of JT after his death.

It was at the request of his estate managers, Jay Pabian and Todd Kamens, that Lunn continued to work at JT for a while after Jeff's death until her resignation.  The infighting between Fruman, Pabian, Kamens, and Larry started almost immediately. This included accusations that Lunn had changed the locks and locked Fruman out of the building, when in fact Lunn did no such thing nor ordered anyone to do so. Moreover, Fruman never had a key to the building nor ever worked inside it. From that point Lunn, who considered herself now working for Jeff's estate, started getting conflicting information and direction of what she could and could not do, including paying Fruman.

She had trusted Jeff and  JT's corporate attorney to take care of the legal transactions on behalf of the company while Jeff was alive. However it was not until after Jeff's death that it came to light that at certain times, when Lunn thought she was the majority shareholder, she de facto may not have been and vice versa because of oversights in recording stock transfers which she always left to the attorneys and Jeff  to do. Lunn never intentionally made any

6

misrepresentations about her ownership in JT nor did she personally benefit from any such representations. She never had an ownership interest, nominally or otherwise, in any of Jeff's other businesses.

Nonetheless soon after and largely as a result of Jeff's death, the company lost all of its clients except one and became insolvent. Due to its finances and the directions received by Lunn from Jeff's estate managers, Lunn was prohibited from compensating Fruman as she had previously and litigation ensued. Fruman commenced litigation against Jeff's former attorney, Jeff Pabian, and his law firm and Lunn. Fruman may or may not have had valid claims against these other parties, but they are not parties for whom Lunn was responsible. Fruman has attempted to make Lunn the scapegoat for the financial fallout she experienced after Jeff's death but in reality Lunn was merely caught in between all these parties' attempt at a huge money grab, while she was just trying to do her best to keep a sinking company afloat for the benefit of Jeff's estate and its heirs. Ultimately the company lost its clients, ran out of money and Lunn could not keep paying Fruman, but never was that out of any bad intentions towards Fruman.

**f.   The names, address, and telephone number of each witness, separately identifying the witnesses each party expects to present and those witness to be called only if the need arises.**

Lunn's witness list is the same as identified in Fruman's Pretrial Memorandum.

Lunn also reserves the right to call as necessary keepers of records and rebuttal witnesses.

**g.   A list of witnesses whose testimony may be presented by means of a deposition.**

Lunn list is the same as identified in Fruman's Pretrial Memorandum

**h. A statement confirming that the parties have exchanged exhibits.**

Lunn confirms that she received Fruman's responses to discovery as identified in Fruman's Pretrial Memorandum and that she has provided discovery to Fruman but that nothing has yet been exchanged and marked as Exhibits for trial between the parties. In addition to Exhibits that have been previously provided to the Court, Lunn intends to use any or all of the following documents provided by Fruman and identified by Fruman as follows:

| Starting # | Ending # |
|---|---|
| PFBK000079 | PFBK000086 |
| PFBK000119 | PFBK000132 |
| PFBK000165 | PFBK000172 |
| PFBK000193 | PFBK000194 |
| PFBK000441 | PFBK000445 |
| PFBK000475 | PFBK000477 |
| PFBK000499 | PFBK000499 |
| PFBK000514 | PFBK000514 |
| PFBK000515 | PFBK000516 |
| PFBK000517 | PFBK000519 |
| PFBK000521 | PFBK000523 |
| PFBK000524 | PFBK000527 |
| PFBK000536 | PFBK000538 |
| PFBK000539 | PFBK000539 |
| PFBK000540 | PFBK000544 |
| PFBK000555 | PFBK000558 |
| PFBK000564 | PFBK000565 |
| PFBK000566 | PFBK000571 |
| PFBK000574 | PFBK000654 |
| PFBK000655 | PFBK000659 |
| PFBK000660 | PFBK000666 |
| PFBK000667 | PFBK000670 |
| PFBK000683 | PFBK000683 |
| PFBK000689 | PFBK000689 |

PFBK000692 PFBK000694

PFBK000695 PFBK000697

PFBK000698 PFBK000709

PFBK000710 PFBK000710
PFBK000783 PFBK000783
PFBK000784 PFBK000784
PFBK000785 PFBK000789
PFBK000790 PFBK000790
PFBK000791 PFBK000835

PFBK000887 PFBK000896

PFBK000897 PFBK000902

PFBK000903 PFBK000907
PFBK000916 PFBK000916
PFBK000919 PFBK000938
PFBK000950 PFBK000950
PFBK000960 PFBK000960
PFBK000990 PFBK000990
PFBK000995 PFBK000996
PFBK000997 PFBK000997
PFBK001000 PFBK001001
PFBK001233 PFBK001233
PFBK001254 PFBK001255
PFBK001256 PFBK001257

PFBK001276 PFBK001278

PFBK001296 PFBK001296

PFBK001351 PFBK001352

PFBK001562 PFBK001564

PFBK001612 PFBK001616
PFBK001745 PFBK001753
PFBK002067 PFBK002067

PFBK002073 PFBK002074

PFBK002105 PFBK002106
PFBK00218 PFBK00219

PFBK002182  PFBK002182
PFBK002189  PFBK002189
PFBK002191  PFBK002191
PFBK002202  PFBK002202
PFBK002204  PFBK002204
PFBK002205  PFBK002209
PFBK002227  PFBK002306
PFBK002307  PFBK002307
PFBK002308  PFBK002309
PFBK002310  PFBK002311
PFBK002313  PFBK002315
PFBK002317  PFBK002318
PFBK002322  PFBK002322
PFBK002323  PFBK002323
PFBK002341  PFBK002343
PFBK002344  PFBK002344
PFBK002345  PFBK002345
PFBK002387  PFBK002389
PFBK002394  PFBK002394
PFBK002395  PFBK002402
PFBK002412  PFBK002415
PFBK002423  PFBK002425
PFBK002526  PFBK002526
PFBK002538  PFBK002538
PFBK002567  PFBK002568
PFBK002768  PFBK002768
PFBK002769  PFBK002769
PFBK002785  PFBK002785
PFBK002786  PFBK002786
PFBK002796  PFBK002802
PFBK002854  PFBK002855
PFBK002906  PFBK002907
PFBK002947  PFBK002949
PFBK002950  PFBK002957
PFBK002963  PFBK002963
PFBK003130  PFBK003130
PFBK003133  PFBK003133
PFBK003148  PFBK003148
PFBK003181  PFBK003181
PFBK003184  PFBK003187

PFBK003190  PFBK003192

PFBK003197  PFBK003198

PFBK003257  PFBK003258
PFBK003278  PFBK003278
PFBK003279  PFBK003283
PFBK003284  PFBK003284
PFBK003297  PFBK003298
PFBK003304  PFBK003335
PFBK003341  PFBK003347
PFBK003362  PFBK003362

PFBK003367  PFBK003368

PFBK003369  PFBK003371
PFBK003372  PFBK003374
PFBK003377  PFBK003377
PFBK003385  PFBK003387
PFBK003390  PFBK003392
PFBK003400  PFBK003400
PFBK003412  PFBK003413
PFBK003416  PFBK003416
PFBK003417  PFBK003417
PFBK003418  PFBK003418
PFBK003425  PFBK003426
PFBK003431  PFBK003431
PFBK003445  PFBK003445
PFBK003448  PFBK003448
PFBK003451  PFBK003451
PFBK003452  PFBK003452
PFBK003454  PFBK003455
PFBK003462  PFBK003465
PFBK003469  PFBK003469
PFBK003475  PFBK003475
PFBK003477  PFBK003477
 PFBK00348  PFBK003353
PFBK003490  PFBK003490
PFBK003491  PFBK003491
PFBK003492  PFBK003493
PFBK003503  PFBK003505
PFBK003506  PFBK003507
PFBK003516  PFBK003518

Document    Page 12 of 13

PFBK003519  PFBK003519

PFBK003530  PFBK003530

PFBK003537  PFBK003538

PFBK003540  PFBK003544
PFBK003553  PFBK003555
PFBK003823  PFBK003823

PFBK003824  PFBK003838

PFBK003923  PFBK003923
PFBK003955  PFBK003957

PFBK003961  PFBK004037

PFBK004038  PFBK004040

PFBK004097  PFBK004098

PFBK004203  PFBK004206
PFBK004275  PFBK004275

PFBK004279  PBFK004280

PFBK004299  PFBK004231
PFBK004367  PFBK004368
PFBK004388  PFBK004388
PFBK004390  PFBK004392
PFBK004393  PFBK004395

PFBK004398  PFBK004401

PFBK004402  PFBK004403
PFBK004404  PFBK004406
PFBK004412  PFBK004414
PFBK004415  PFBK004423
PFBK004448  PFBK004453

PFBK004454  PFBK004512

PFBK004516  PFBK004518

PFBK004526  PFBK004526

```
PFBK004530    PFBK004530

PFBK004531    PFBK004531

PFBK004536    PFBK004538

PFBK004539    PFBK004542
```

**i. If applicable, a statement disclosing any records of regularly conducted business activity under FED. R. Evid 803(6) that a party intends to present by certification, as permitted by FED. R. Evid. 902(111) and (12), rather than by testimony of an authentication witness.**

None at this time but Lunn reserves the right to do so if needed.

**j. Any objection, including the grounds for the objection, to the calling of any witnesses, including expert, the presentation of testimony through use of a deposition, or the admissibility of documents or exhibits.**

None at this time but Lunn reserves the right to do so if needed.

**k. An estimated time of trial.**

Lunn anticipates it will take 3 to 4 days to try this matter.

> Joanne N. Lunn
> by her attorney,
>
> */s/ Honoria DaSilva-Kilgore*
> Honoria DaSilva-Kilgore, BBO# 564202
> The Law Offices of
> Honoria DaSilva-Kilgore, P.C.
> 2 Richard Street, P.O. Box 277
> Raynham, MA  02767
> (508) 822-3200
> hdklaw@hdklawoffices.com